UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 21-17617-LMI |
| FIVETOWER, LLC, | Chapter 7 |
| Debtor. _____/ | |
| DREW M. DILLWORTH, Chapter 7 Trustee of the estate of the above-captioned Debtor, | Adv. Proc. No. _____ |
| Plaintiff, | |
| WEINBERG & ASSOCIATES, INC., a Florida corporation, and MICHAEL T. WEINBERG, an individual, | |
| Defendants. _____/ | |

**ADVERSARY COMPLAINT TO AVOID AND RECOVER
AVOIDABLE TRANSFERS AND FOR OTHER RELIEF**

The Plaintiff, DREW M. DILLWORTH (the "Trustee"), Chapter 7 Trustee of the bankruptcy estate of the Debtor, FiveTower, LLC (the "Debtor" or "FTL"), files this *Adversary Complaint to Avoid and Recover Avoidable Transfers and for Other Relief* against the Defendants, WEINBERG & ASSOCIATES, INC., a Florida corporation, ("WAI") and MICHAEL T. WEINBERG ("Weinberg"), an individual (collectively, the "Defendants"), and alleges:

**THE PARTIES, JURISDICTION, AND VENUE**

1. On August 2, 2021, the Debtor filed a voluntary petition for relief under Chapter 11, Sub-Chapter V, of title 11 of the United States Code (the "Bankruptcy Code") [ECF 1].

2. By Order dated February 7, 2022, the case converted to Chapter 7 [ECF 252] (the

"Conversion Date").

3. Thereafter, Mr. Dillworth was appointed Trustee pursuant to Section 701 of the Bankruptcy Code, and remains the duly appointed and acting Trustee of the Estate of the Debtor with the legal standing and authority to prosecute the claims alleged herein.

4. Defendant WAI is a Florida corporation that represents itself as specializing in business consulting services for, *inter alia*, asset-based lending and factoring, including field exams and due diligence.

5. Defendant Weinberg is an individual who, at all relevant times, was the president, owner, and primary control person of WAI with over 25 years of experience providing consulting services for businesses. At all relevant times, Weinberg was acting within the scope of his duties as an officer, manager, and duly authorized control person of WAI.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS COMMON TO ALL CLAIMS

**A. FTL's Background**

8. FTL was a Florida limited liability company formed in September 2014 with a principal place of business in Aventura, Florida.

9. From 2014 through the Conversion Date, FTL provided working capital to small and medium sized businesses in New York City, South Florida, California, and other states by operating what is known as "merchant cash advance" business, whereby the company would purchase a percentage of a merchant's future receivables.

10. At all relevant times, FTL was owned and operated by its president, manager, and

owner, Renaud Mariotti ("Mariotti").

11. The Debtor's website posted with the approval of Mariotti described its business as follows:

> Whether you need cash to support growth or to help you through tough times, business owners need to find alternatives to keep their cash flow positive and be successful. U.S. banking regulations are making it more difficult to get approved for a loan and outstanding personal credit history is a necessity. It's not a surprise that since 2008, the value of loans outstanding, in the United States has been steadily declining quarter to quarter, according to the SBA (Small Business Administration).
>
> However, regardless the increasing risk that comes along with financing small businesses, there are funders, like FiveTower, that open their doors to business owners. FiveTower's advance products are one of the easiest to obtain and most reliable financing options. It is a non-collateralized advance based on the volume that flows through a company's business bank account. Once approved, the merchant will receive the funds within 24 to 48 hours. The advanced amount will be paid back either by withholding a percentage of the merchants credit card sales or directly through the business bank account.[1]

12. To fund operations, the Debtor solicited third party investors, each of whom were provided, *inter alia*, multi-year promissory notes or other similar debt instruments at interest rates ranging from 10% to 20% with the Debtor as the maker, and each investor as a lender (collectively, the "Noteholders" or separately, "Noteholder").

B. **WAI Enters into a "Statement of Work" with the Debtor**

13. In a document entitled "Statement of Work" dated December 15, 2016, the Debtor retained WAI and Weinberg to provide annual business audits, consulting, and portfolio review and other professional services to the company, which provided as follows:

> I. Services to be Provided by W&A

---

[1] The Wayback Machine – https://web.archive.org/web/20230608005836/https://fivetower.com/how-it-works/ (captured Jun. 8, 2023).

> Five Tower, LLC (FTL), has retained Weinberg & Associates, Inc. (W&A), to assist FTL with its ongoing monthly credit review process. At the beginning of each month, W&A will receive an updated A/R Aging and other internal credit reports in order to review and monitor FTL's portfolio. In addition, FTL will send to W&A monthly financial statements in 2017 as part of the review process. If W&A observes anything that warrants further review or concern, W&A will notify Management via email within 10 days from receipt of all documents. If no issues are noted, no communication and/or further contact is required from W&A.
>
> II. Term of Agreement & Compensation
>
> For this service, which will begin on 12/15/16, W&A will be paid $1,175.00 per month on the first of every month for the prior month's work. The first payment will be prorated, which will equal $587.50, and will be due on 1/4/17. In the event the 1st falls on a weekend and/or bank holiday, FTL agrees to pay W&A on the business day prior to the 1st of the month starting in February 2017. The first full payment of $1,175.00 is due by 2/1/17, for the prior months review. Payment will be made via ACH to W&A's bank account at Bank of America. In the event additional work is requested by FTL, or W&A feels that additional work is required to support the analysis due to the growth in the portfolio, W&A has the option to request additional compensation, which will be subject to approval by FTL in writing.
>
> This 3-year Agreement will begin on 12/15/16 and will expire on 12/15/19. Ninety days prior to the expiration date, W&A and FTL will review the scope of this Agreement and determine whether to renew it and/or allow it to expire. FTL has the right to prepay this 3-year obligation in full at any time during the term of this Agreement.

(the "Statement of Work Services").

14. In addition to the performance of their duties and functions under the Statement of Work, Defendants also voluntarily undertook and performed other professional services with respect to other aspects of FTL's business and financial operations, including advice related to business strategies and creditor relations (the "Other Services," and collectively with the Statement of Work Services, the "Professional Services").

### C. Defendants Permit a Material Adverse Shift in FTL's Business Model

15. At all relevant times, Defendants knew and understood based upon their 25 years of expertise and experience that, given the nature of the merchant cash advance business in relation to the FTL's gross revenues (totaling approximately $3 million by 2019), along with then-existing and future working capital needs, it was critical to the company's business and financial health and success to employ a "micro-advance" approach that focused on small loans to a large number of clients ("Micro-Advancing"). Such an approach strategically avoided a high concentration of advances with any one client and its affiliated business entities.

16. For years prior to the Petition Date, a Micro-Advancing approach was in place and practiced by FTL and was in in fact touted to potential investors and existing Noteholders in further support of the purported safety and soundness of Noteholder investments in the company.

17. Despite the foregoing, by early 2018, FTL, after having consulted with Defendants, materially and adversely shifted its business model away from the Micro-Advancing approach by advancing a total $2,875,000 concentrated in one client group – Alejandro Scolnik and entities he owned and/or controlled (collectively, the "Scolnik Debtors"), which represented a substantial portion of the company's outstanding advance portfolio at such time. Notably, this material change in approach recommended and approved by Defendants was not disclosed to then-existing or future potential Noteholders by Mariotti or Defendants.

18. In March 2018, the Scolnik Debtors defaulted on their repayment obligations to FTL with an unpaid cash advance balance of at least $1.5 million, and in May 2019, Scolnik and his wife filed for bankruptcy protection, rendering the full amount of this debt uncollectible.

19. Had Defendants properly performed the Statement of Work Services, these losses to FTL would have been largely avoided.

### D. Defendants Failed to Fully or Properly Perform the Statement of Work Services

20. Defendants did not fully or properly perform the Statement of Work Services. Among other acts and omissions, Defendants failed to assist FTL with its ongoing monthly credit review process and review and monitor on a monthly basis FTL's portfolio, FTL's financial statements, and FTL's financial condition.

21. These failures led to major losses to FTL, as FTL advanced and continued to advance monies under the new business model, which ultimately resulted in material defaults and unpaid outstanding balances owed to FTL by the Skolnick Debtors.

22. Had Defendants been performing the Statement of Work Services, they would have identified and stopped the material adverse shift in FTL's business model.

### E. The Debtor's Dire Financial Distress is Hidden from Investors and Noteholders

23. Despite the devastating financial impact on FTL's operations as a going concern caused by the uncollectability of the Scolnik Debtors' obligations to the company, Noteholder solicitations continued during 2018 and 2019, with then-existing Noteholders being kept in the dark by Mariotti and Defendants about the true, materially impaired financial condition of the company.

24. Indeed, in its bankruptcy schedules, the Debtor disclosed assets purportedly valued at $661,785.45, with liabilities totaling $1,979,924.05.

25. In truth, at the time of the bankruptcy filing the Debtor's assets had a fraction of their disclosed value (and a fraction of the prior value of the assets) because during the years leading up to the Petition Date, Defendants provided services to the Debtor that caused materially inaccurate business, financial, operational, and regulatory information to be provided to third parties, including to the company's investors and Noteholders, all of which served to artificially

6

mask FTL's true, materially impaired financial condition.

26. Thus, from and after 2018, the Debtor was not the profitable business enterprise it claimed to be, but instead was suffering material annual losses, was balance sheet insolvent, and was otherwise unable to pay its debts as such debts came due or matured – all to the detriment of the company, its investors, and the Noteholders, who were continuously misled about the company's debilitating financial distress both prior to and after they invested in the company.

**F. The Debtor's Bad Faith Attempt to Blame Covid-19 for its Financial Woes**

27. In its Chapter 11 Case Management Summary (the "CMS") filed with the Bankruptcy Court, the Debtor attempted to place blame on the Covid-19 pandemic for its financial woes, asserting that "FiveTower's small business customers were gravely affected by the pandemic and ensuing government-ordered shutdowns during the first two quarters of 2020."

28. But, as explained above, the pandemic did not cause the Debtor's financial problems, it merely brought them to light, with Defendants' negligent performance of their duties for and on behalf of FTL being a material cause of the damage and harm to FTL.

29. By early March 2020, Mariotti and Defendants knew that the Covid-19 pandemic had brought FTL's merchants' operations to a halt and that Noteholder forbearances on those notes that had become due, or would become due shortly, would be required.

30. Irrespective, despite the dire and hopeless financial condition of the company at such time, Mariotti and Defendants advised certain Noteholders with defaults that FTL's failure to pay was a "mistake" or an "oversight," as opposed to being a material issue with the state of the business itself.

**G. The Debtor, with the Advice and Consultation of Defendants, Forms a Sham Entity to Hinder and Delay Certain Noteholders**

7

31. In addition to the Covid-19 references, the CMS further disclosed that FTL decided to favor certain Noteholders by paying them a portion of their claims through a sham entity set up by Mariotti called the "5T Creditor Trust LLC":

> For over a year, since the inception of the pandemic and mandatory government closings temporarily shutting down its merchant cash advance business, FiveTower sought a resolution of claims of all its creditors, including all unsecured promissory note holders. Since then. Debtor settled with nine of its eleven similarly situated groups of creditors. FiveTower set aside monies through the descriptively named "5T Creditor Trust, LLC" to resolve creditor claims. Through this vehicle, FiveTower effectively settled with most of its similarly situated creditors. Related non-settling creditors commenced litigation in May 2020, in the midst of the pandemic and within 60 days of FiveTower's first late payment of interest or any obligation to non-settling (or any) creditor. That litigation has not ceased or settled, depleting FiveTower resources to the point it cannot continue operating without protection afforded by the Bankruptcy Court. FiveTower has additional creditors.

32. This approach, which was adopted and executed by FTL with the advice and consultation of Defendants, left no material assets to pay the claims of the remaining unpaid Noteholders when FTL's bankruptcy case was filed, and was clearly employed to hinder or delay the collection efforts of such Noteholders.

### H. The End of Line

33. On June 18, 2021, a Noteholder creditor that had obtained a judgment against FTL moved for the appointment of a receiver over FTL.

34. Fearful of a loss of control over the company, and after consulting with Defendants, on August 2, 2021, Mariotti caused FTL to file its Sub-V Chapter 11 bankruptcy proceeding which, as noted above, was thereafter converted to a Chapter 7 six months later.

## The Transfers at Issue

35.     Prior to the Petition Date, Defendants received certain transfers from the Debtor in the form of the payments (collectively, the "Payment Transfers") set forth below:

| Bank | Date | Amount | Payee |
|---|---|---|---|
| BOA 0175 | 9/1/2017 | 2,345.98 | Weinberg & Associates |
| BOA 0175 | 10/3/2017 | 2,937.50 | Weinberg & Associates |
| BOA 0175 | 11/1/2017 | 3,084.78 | Weinberg & Associates |
| BOA 0175 | 12/1/2017 | 3,113.75 | Weinberg & Associates |
| BOA 0175 | 1/2/2018 | 3,113.75 | Weinberg & Associates |
| BOA 0175 | 2/1/2018 | 4,475.46 | Weinberg & Associates |
| BOA 0175 | 3/1/2018 | 4,582.50 | Weinberg & Associates |
| BOA 0175 | 4/2/2018 | 4,582.50 | Weinberg & Associates |
| BOA 0175 | 5/1/2018 | 4,609.54 | Weinberg & Associates |
| BOA 0175 | 6/1/2018 | 4,700.00 | Weinberg & Associates |
| BOA 0175 | 7/2/2018 | 4,700.00 | Weinberg & Associates |
| BOA 0175 | 8/1/2018 | 4,700.00 | Weinberg & Associates |
| BOA 0175 | 9/4/2018 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 10/1/2018 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 11/1/2018 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 12/3/2018 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 1/2/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 2/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 3/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 4/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 5/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 6/3/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 7/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 8/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 9/4/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 10/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 11/1/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 11/29/2019 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 1/2/2020 | 4,846.88 | Weinberg & Associates |
| BOA 0175 | 2/3/2020 | 4,553.13 | Weinberg & Associates |
| BOA 0175 | 3/2/2020 | 4,553.13 | Weinberg & Associates |
|  |  | $ 138,448.98 |  |

36.     Defendant WAI received the Payment Transfers directly from the Debtor.

37.     Defendant Weinberg received the benefit of the Payment Transfers, and upon information and belief, received the Payment Transfers from WAI as a mediate transferee of the Payment Transfers.

38.     Defendants failed to provide reasonably equivalent value to the Debtor for the

9

Payment Transfers based upon their failure to, *inter alia,* fully or properly discharge their duties to FTL as required by law, the Statement of Work agreement, and/or of their profession.

39. Alternatively, the Debtor made the Payment Transfers to Defendants with an actual intent to *hinder or delay* creditors, and Defendants were not good faith transferees based upon their acts and omissions, as well as the knowledge they gained from the Debtor and its principals, all as alleged herein.

### I. Insolvency

40. At all relevant times, the Debtor was insolvent and/or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they matured or otherwise became due.

### J. Conditions Precedent

41. All conditions precedent to the filing of this action have been performed, waived, satisfied, excused, and/or have otherwise occurred.

## ACTION TO AVOID AND RECOVER AVOIDABLE TRANSFERS

The Trustee sues the Defendants and alleges:

42. The Trustee realleges paragraphs 1 through 41 above.

43. This is an action against Defendants seeking to avoid and recover the Payment Transfers as avoidable transfers.

44. At the time of the Payment Transfers, creditors existed who each held an unsecured claim against the Debtor and could have sought avoidance of the Payment Transfers under Florida law. Those creditors included Ryan Sherman; Barbara Sherman, individually and in her capacity as (a) Trustee of the Michael H. Sherman Family Trust, which is that certain trust identified as the Family Trust also known as "The Michael H. Sherman Family Trust" also known as "M H Sherman

IRREV T U/T/A" also known as "Michael H Sherman Family Trust" also known as "M H Sherman IRE TR U/T/A, MSL FBO Barbara Sherman T/EE, 12/16/1998 FBO Family TR" and (b) Trustee of the Michael H. Sherman Marital Trust, both of which were created under that certain Second Amendment and Restatement of The Michael H. Sherman Trust – 1992 dated December 15, 2005, which was amended by a First Amendment to the Second Amendment and Restatement of The Michael H. Sherman Trust – 1992 dated May 30, 2008; and Dianne Weinberg.

45. During the four years prior to the Petition Date, FTL made the Payment Transfers to Defendants.

46. Pursuant to 11 U.S.C. §§ 544 and 548, and Chapter 726 of the Florida Statutes or other applicable avoidance law, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes or other applicable avoidance law) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder or delay, any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

47. Pursuant to 11 U.S.C. § 550, in an avoidance action commenced under Sections

544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes or other applicable avoidance law, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer and/or *the entity for whose benefit such transfer was made*, i.e,, the sole owner of a closely held business entity that receives avoidable transfers as an initial transferee; and (2) any immediate or mediate transferee of such initial transferee.

48.     The Debtor did not receive reasonably equivalent value in exchange for each of the Payment Transfers and it: (i) was insolvent at the time of the Payment Transfers; or (ii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due or matured.

49.     Alternatively, the Payment Transfers were made by the Debtor with an actual intent to *hinder or delay* creditors of the Debtor, and are otherwise avoidable pursuant to Section 548 and Chapter 726 of the Florida Statutes because of the application of the badges identified under applicable avoidance law to establish actual intent under Florida and federal bankruptcy law that include, but are not necessarily limited to: (i) the Payment Transfers made on account of the Professional Services rendered were made to *de facto* insiders of the Debtor by virtue of, *inter alia*, their course of dealings, close contract with, and close interactions with the Debtor and its principals, (ii) the Payment Transfers and the obligations to perform the Professional Services thereunder were not disclosed to, and/or were otherwise concealed from, creditors of the Debtor, including the Sheman Creditors, (iii) the Debtor removed and/or concealed assets as result of the formation of, along with the improper payments made by the Debtor to, the 5T Creditor Trust, LLC for little or no consideration, (iv) the value of the consideration received by the Debtor was not reasonably equivalent to the value of the Payment Transfers made and/or obligations incurred

on account of the Professional Services rendered based upon the failure of Defendants to fully or properly perform such services they were retained to provide to the Debtor by express or implied agreement and/or course of dealings of the parties, and (v) as alleged above and realleged here, the Debtor was insolvent and/or otherwise unable to pay its debts as such debts matured or came due at or about the time the Payment Transfers were made and/or the obligations to perform the Professional Services were incurred; and (b) Defendants were not good faith transferees based upon their acts and omissions alleged herein, and the knowledge and information they obtained from the Debtor and its principals of their bad faith motives and intentions toward creditors as alleged in (i) to (v) of this paragraph above.

50. The Debtor received less than reasonably equivalent value in exchange for the Payment Transfers and/or obligations incurred in the performance of the Professional Services; and (ii)(I) was insolvent on the date that such Payment Transfers were made or such obligations was incurred, or became insolvent as a result of such Payment Transfers or obligations; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

51. As a result of the above, the Trustee can avoid the Payment Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapters 726 of the Florida Statues, and recover the value thereof against the Defendants for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

**WHEREFORE**, the Trustee demands the entry of judgment against Defendants: (i) avoiding the Payment Transfers as to the initial transferee, WAI, and/or Weinberg, the entity for

whose benefit the Payment Transfers were made or as an immediate or mediate transferee; (ii) awarding a money judgment against Defendants and in favor of the Trustee in an amount equal to the amount of the Payment Transfers pursuant to 11 U.S.C. § 550(a); (iii) awarding pre-judgment interest; and (iv) awarding any other relief the Court deems appropriate.

Submitted this 19th day of March, 2024.

**CIMO MAZER MARK PLLC**
*Special Litigation Co-*
 *Counsel for the Trustee*
255 Alhambra Circle, Suite 1160
Coral Gables, FL 33134
Tel: (305) 374-6480
Fax: (305) 374-6488

By: /s/ David C. Cimo
    David C. Cimo, Esq.
    Fla. Bar. No. 775400
    Email: dcimo@cmmlawgroup.com

-and-

**LESSNE LAW**
*Special Litigation Co-*
 *Counsel for Trustee*
100 SE 3rd Avenue, 10th Floor
Fort Lauderdale, FL 33394
Tel: (954) 372-5759

By: /s/ Michael D. Lessne
    Michael D. Lessne, Esq.
    Fla. Bar No. 73881
    E-mail: michael@lessne.law